**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT (SBN 321222)
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiff***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL RODRIGUEZ, on behalf of herself, all others similarly situated, and the general public, <br><br> Plaintiff, <br><br> v. <br><br> ALTER ECO AMERICAS INC., <br><br> Defendant. | Case No: **'23CV0053 L    AGS** <br><br> <u>CLASS ACTION</u> <br><br> **COMPLAINT FOR VIOLATIONS OF:** <br> **CAL. BUS. & PROF. CODE §§17200 *et seq.*;** <br> **CAL. BUS. & PROF. CODE §§17500 *et seq.*;** <br> **CAL. CIV. CODE §§ 1750 *et seq.*;** <br> **BREACH OF IMPLIED WARRANTIES ; and** <br> **UNJUST ENRICHMENT** <br><br> <u>DEMAND FOR JURY TRIAL</u> |

1   Plaintiff Crystal Rodriguez, on behalf of herself, all others similarly situated, and the
2   general public, by and through her undersigned counsel, hereby sues Alter Eco Americas Inc.
3   ("Alter Eco"), and alleges the following upon her own knowledge, or where she lacks
4   personal knowledge, upon information and belief, including the investigation of her counsel.

5   ## INTRODUCTION

6   1.      Alter Eco markets and sells the Alter Organic Dark Chocolate Classic Blackout
7   85% Cacao dark chocolate bar [hereafter the "Product"]. Alter Eco sells the Product
8   throughout the United States, including in California.

9   2.      A December 2022 report by Consumer Reports states that "[r]esearch has found
10  that some dark chocolate bars contain cadmium and lead—two heavy metals linked to a host
11  of health problems in children and adults," in amounts such that "eating just an ounce a day
12  would put an adult over a level that public health authorities and [Consumer Report's]
13  experts say may be harmful for at least one of those heavy metals." Among those containing
14  substantial levels of cadmium and lead is the Product, as pictured below.



15
16
17
18
19
20
21
22
23

24  3.      As shown above, the Alter Eco Product tested at 204% of California's
25  maximum allowable dose level (MADL) for cadmium and, while below California's
26  maximum allowable dose level for lead, as discussed in more detail below, there is no safe
27  level of lead in food products.

28

*Rodriguez v. Alter Eco Americas Inc.*
CLASS ACTION COMPLAINT

4.     Lead and cadmium are heavy metals and their presence in food, alone or combined, poses a serious safety risk to consumers because they can cause cancer and serious and often irreversible damage to brain development, liver, kidneys, bones, and other serious health problems. As Consumer Reports noted, "both cadmium and lead pose serious health risks" and, with respect to lead specifically, "no amount of it is considered safe."

5.     As described more fully below, consumers who purchased the Product were injured by Alter Eco's acts and omissions concerning the presence of lead and cadmium. No reasonable consumer would know, or have reason to know, that the Product contains heavy metals, including lead and cadmium. Worse, as companies across the industry have adopted methods to limit heavy metals in their dark chocolate products, Alter Eco has stood idly by with a reckless disregard for its consumers' health and well-being.

6.     Plaintiff brings this action against Alter Eco on behalf of herself, similarly-situated Class Members, and the general public to enjoin Alter Eco from deceptively marketing the Product, and to recover compensation for injured Class Members.

## JURISDICTION & VENUE

7.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a State different from Alter Eco. In addition, more than two-thirds of the members of the class reside in states other than the state in which Alter Eco is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

8.     The Court has personal jurisdiction over Alter Eco as a result of Alter Eco's substantial, continuous and systematic contacts with the State, and because Alter Eco has purposely availed itself of the benefits and privileges of conducting business activities within the State, including by marketing, distributing, and selling the Product in California. Alter Eco is also headquartered and has its principal place of business in California.

9.      Venue is proper in this Southern District of California pursuant to 28 U.S.C. § 1391(b) and (c), because Alter Eco resides (*i.e.*, is subject to personal jurisdiction) in this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

10.      Plaintiff Crystal Rodriguez is a resident of San Diego County, California.

11.      Defendant Alter Eco is a Delaware corporation with its principal place of business in San Francisco, California.

## FACTS

### I.     Lead and Cadmium are Toxic and are Present in the Alter Eco Product at Unsafe Levels

12.      California recognizes that certain chemicals and elements are "known to the state to cause cancer or reproductive toxicity . . . if in the opinion of the state's qualified experts it has been clearly shown through scientifically valid testing according to generally accepted principles to cause cancer or reproductive toxicity." *See* Cal. Health & Safety Code § 25249.8(b). Cadmium, in the amount found in the Product, is on the list of chemicals known to cause cancer and/or reproductive harm.

13.      The harmful effects of lead, in any amount, are well-documented, particularly on children. Exposure puts children at risk for lowered IQ, behavioral problems (such as attention deficit hyperactivity disorder (ADHD)), type 2 diabetes, and cancer, among other health issues. Heavy metals also pose risks to adults. Even modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions. As such, it is important to limit exposure.

14.     "No amount of lead is known to be safe."[1] Exposure to lead may cause anemia, weakness, and kidney and brain damage.[2] Lead affects almost every organ and system in the body and accumulates over time, leading to severe health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death.[3] Lead can also cross the fetal barrier during pregnancy, exposing the mother and developing fetus to serious risks, including reduced growth and premature birth.[4] Lead exposure is also harmful to adults as more than 90 percent of the total body burden of lead is accumulated in the bones, where it is stored.[5] Lead in bones may be released into the blood, re-exposing organ systems long after the original exposure.[6]

15.     Cadmium, also a heavy metal, likewise poses a serious safety risk to consumers because it can cause cancer and is a known teratogen, an agent which causes malformation of an embryo. Exposure to cadmium can affect the kidneys, lungs and bones.[7] There may be no safe level of exposure to a carcinogen, so all contact should be reduced to the lowest possible level.[8] It is considered a class 1 carcinogen by the World Health Organization.[9] Even at low exposure, cadmium can cause nausea, vomiting, diarrhea and abdominal pain.

---

[1] *See* https://www.npr.org/sections/thetwo-way/2016/08/13/489825051/lead-levels-below-epalimits-can-still-impact-your-health

[2] https://www.cdc.gov/niosh/topics/lead/health.html

[3] *Id.*

[4] *See* https://www.cdc.gov/nceh/lead/prevention/pregnant.htm

[5] *See* State of New York Department of Health, "Lead Exposure in Adults: A Guide for Health Care Providers," available online at https://www.health.ny.gov/publications/2584.pdf.

[6] *Id.*

[7] https://www.betterhealth.vic.gov.au/health/healthyliving/cadmium

[8] New Jersey Department of Health Fact Sheet (available online at https://www.nj.gov/health/eoh/rtkweb/documents/fs/0305.pdf)

[9] https://www.unep.org/explore-topics/chemicals-waste/what-we-do/emerging-issues/lead-and-cadmium

*Rodriguez v. Alter Eco Americas Inc.*
CLASS ACTION COMPLAINT

And, because cadmium builds up in the body, even at low dosage, repeated exposure can cause liver and kidney damage, anemia and loss of smell. According to the Centers for Disease Control, "exposure to low levels of cadmium in . . . food . . . over time may build up cadmium in the kidneys and cause kidney disease and fragile bones" and is indisputably "considered a cancer-causing agent."[10]

16.     It is undisputed that the Product contains lead and cadmium, and that Alter Eco has known as much for at least the last three years. In September 2019, Alter Eco (and several other manufacturers and distributors of dark chocolate products) received notice that at least some of its dark chocolate products contained excessive cadmium and lead, including by being provided with certificates of merit that independent experts confirmed the presence of heavy metals. However, Alter Eco failed to warn consumers that consuming the Product exposes consumers to those chemicals.

17.     Moreover, in December 2022, Consumer Reports ["CR"], a consumer protection and advocacy organization dedicated to independent product testing, consumer-oriented research, and investigative journalism, tested 28 different dark chocolate bars for lead and cadmium. The results showed that the Alter Eco Product contained more than *double* the Maximum Allowable Dose Level ["MADL"] for cadmium, and about 0.25 mcg per ounce of lead. The MADL standards are set by the California Office of Environmental Health Hazard Assessment ["OEHHA"].

18.     Notably, the lead is getting into the Alter Eco Product *after* harvesting. As Consumer Reports notes, "lead seems to get into cacao after beans are harvested. The researchers found that the metal was typically on the outer shell of the cocoa bean, not in the bean itself. Moreover, lead levels were low soon after beans were picked and removed from pods but increased as beans dried in the sun for days. During that time, lead-filled dust and dirt accumulated on the beans." Thus, on information and belief, Alter Eco itself is responsible for lead being present in the Product.

---

[10] https://tinyurl.com/y4f2kku7

II.   **Reasonable Consumers Do Not Expect Heavy Metals in the Alter Eco Product; Alter Eco Nevertheless Failed to Disclose the Presence of Lead or Cadmium in the Product**

19.   The global dark chocolate market has witnessed significant growth in recent years and is expected to continue growing into 2023.[11]

20.   The growth of dark chocolate sales is premised, in part, on reasonable consumers' belief that dark chocolate is actually *healthier* than other food choices, and especially healthier than other confectionaries and milk chocolates. "The pervasive health and wellness trend continues to influence dark chocolate market, with manufacturers incorporating organic ingredients and natural sweeteners. The preference for dark chocolate over milk chocolates on accounts its health benefits continues to remain intact," especially as demand for healthy products, generally, increases.[12] Thus, the safety and health effects of the Product are material facts to reasonable consumers.

21.   Given the negative effects of toxic lead and cadmium on human development, especially in embryos and children, and on adult health, the presence of toxic heavy metals in the Product is a material fact to reasonable consumers, including Plaintiff and members of the Class.

22.   A food company like Alter Eco, that is dedicated to offering the "cleanest greenest chocolate" products and which prides itself on environmental improvement and human health, has earned significant public trust that its foods are safe and fit for regular consumption. Reasonable consumers believe that Alter Eco would not sell products that are unsafe.

23.   Alter Eco knew that if the presence of toxic heavy metals in its Product was disclosed to Plaintiff and the Class members, they would be unwilling to purchase the Product or would pay less for them.

---

[11] https://www.persistencemarketresearch.com/market-research/dark-chocolate-market.asp
[12] *Id.*

24.     In light of Alter Eco's knowledge that Plaintiff and the Class members would be unwilling to purchase the Product or would pay less for the Product if they knew that the Product contained toxic heavy metals, Alter Eco intentionally and knowingly concealed this fact from Plaintiff and the Class Members and did not disclose the presence of lead or cadmium on the label of the Product.

25.     Alter Eco knew or should have known that Plaintiff and the Class members would rely upon the packaging of the Product and intended for them to do so but failed to disclose the presence of lead or cadmium.

26.     Alter Eco knew or should have known that it owed consumers a duty of care to adequately test for lead, cadmium, and other heavy metals, particularly considering that it was provided notice of independent expert testing of the Product. Had Alter Eco done so, it would have known that its Product contained significant levels of lead and cadmium. Alternatively, Alter Eco *did* know that its Product contained significant levels of heavy metals and purposely hid that fact from consumers.

27.     Additionally, Alter Eco knew or should have been aware that a reasonable consumer would consume the Product regularly, and possibly multiple Products daily, leading to repeated exposure to both lead and cadmium, which each independently accumulate in the body and its systems over time.

28.     Alter Eco knew or should have known it could control the levels of lead and cadmium in the Product by properly monitoring for heavy metal presence, sourcing ingredients with less heavy metals, or none at all, adjusting its formulation to reduce or eliminate heavy metals, or improve its manufacturing process to eliminate introduction of lead caused by Alter Eco itself.

29.     Prior to purchasing the Product, Plaintiff and the Class members were exposed to, saw, read, and understood the labels of the Product, and relied upon the same in purchasing the Product, but Alter Eco failed to disclose the presence of heavy metals.

30.    As a result of Alter Eco's concealment of the fact that the Product contained toxic heavy metals, including lead and cadmium, Plaintiff and the Class members reasonably believed the Product were free from substances that would negatively affect children's development as well as their own health.

31.    Plaintiff and the Class members purchased the Alter Eco Product in reliance upon Alter Eco's labels that contained omissions.

32.    Had Plaintiff and the Class members known that the Product contained toxic heavy metals, rendering them unsafe for consumption, they would not have been willing to purchase the Product or would have paid less for them.

33.    Therefore, as a direct and proximate result of Alter Eco's omissions concerning the Product, Plaintiff and the Class Members purchased the Product and paid more than they were worth.

34.    Plaintiff and the Class members were harmed in the form of the monies they paid for the Product which they would not otherwise have paid had they known the truth about the Product. Since the presence of toxic heavy metals, including lead and cadmium, in the Product renders them unsafe for human consumption, the Product that Plaintiff and the Class members purchased are worthless, or at a minimum are worth less than Plaintiff and the Class paid for them.

**III.    The Product's Labeling Violates California and Federal Food Labeling Law**

35.    The Product's labeling violates California Health and Safety Code §§ 109875, *et. seq.* (the "Sherman Law"), which has expressly adopted the federal food labeling requirements as its own. *See*, *e.g.*, *id.* § 110100; *id.* § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulation adopted pursuant thereto."). Specifically, Alter Eco "fail[ed] to reveal facts that are material in light of other representations made or suggested by the statement[s], word[s], design[s], device[s], or any combination thereof," in violation of 21 C.F.R. § 1.21(a)(1). Such facts include the

detrimental health consequences of consuming the Product given that they contain lead and cadmium, which is unsafe in any amount. In addition, such facts include the detrimental health consequences of consuming the Product, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death, which are all material to a consumer choosing a food product.

## IV.   Plaintiff's Purchase, Reliance, And Injury

36.    Ms. Rodriguez regularly purchased the Alter Eco Product during the Class Period, often making her purchases from Whole Foods and Sprouts stores in San Diego, including at least the Whole Foods at 8825 Villa La Jolla San Diego, California and Sprouts locations at 3015 Clairemont Dr. and 3358 Governor Dr., in San Diego, California.

37.    When purchasing the Product, Plaintiff was seeking a chocolate bar she believed to be healthier than other confectionaries, by virtue of its higher cocoa (and thus lesser sugar) content. Moreover, Plaintiff would have avoided any food she knew contained toxic ingredients, especially heavy metals like lead and cadmium. She would also have avoided purchasing any food she knew could increase her risk of inhibited neurological function, anemia, kidney damage, seizures, coma, or death.

38.    Plaintiff acted reasonably in purchasing the Product, whose label did not disclose the presence of lead or cadmium, or the attendant health risks in consuming the Product.

39.    By omitting that its Product contains lead or cadmium, Alter Eco was able to gain a greater share of the snack market, specifically the confectionary and dark chocolate market, than it would have otherwise and to increase the size of the market.

40.    Plaintiff paid more for the Product, and would only have been willing to pay less, or unwilling to purchase it at all, absent Alter Eco's omissions regarding the lead and cadmium content described herein.

41.   Plaintiff would not have purchased the Product if she had known that it was misbranded pursuant to California and FDA regulations, or that it contained toxic lead or cadmium in the amounts found in the Product.

42.   For these reasons, the Product was worth less than what Plaintiff and the Class Members paid.

43.   Plaintiff and the Class lost money as a result of Alter Eco's omissions and unfair practices in that they did not receive what they paid for when purchasing the Product.

44.   Plaintiff still wishes to purchase snack foods, including dark chocolate, and continues to see Alter Eco dark chocolate products at the stores she regularly shops. She would purchase Alter Eco dark chocolate bars in the future if, because of an injunction requiring Alter Eco to disclose lead or cadmium when present, she could be assured by the absence of a disclosure that the Product no longer contained lead or cadmium. But unless Alter Eco is enjoined in the manner Plaintiff requests, she may not be able to reasonably determine whether the lead or cadmium in the Product has been addressed, or whether Alter Eco is continuing to omit its presence.

45.   Plaintiff's substantive right to a marketplace free of fraud, where she is entitled to rely with confidence on representations such as those made by Alter Eco, continues to be violated every time Plaintiff is exposed to the Product's labels.

46.   Plaintiff's legal remedies are inadequate to prevent these future injuries.

## CLASS ACTION ALLEGATIONS

47.   While reserving the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent a class of all persons in the United States, or alternatively in California, who, at any time from four years preceding the date of the filing of this Complaint to the time a class is notified (the "Class Period"), purchased, for personal or household use, and not for resale or distribution, the Alter Eco Product (the "Class").

48. The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

49. Questions of law and fact common to Plaintiff and the Class include:

a. whether the omissions on the Product labels with respect to lead content is material, or likely to be material, to a reasonable consumer;

b. whether the omissions on the Product labels with respect to cadmium content is material, or likely to be material, to a reasonable consumer;

c. whether the omissions regarding lead content was reasonably likely to deceive a reasonable consumer;

d. whether the omissions regarding cadmium content was reasonably likely to deceive a reasonable consumer;

e. whether Alter Eco's conduct violates public policy;

f. whether Alter Eco's conduct violates state or federal food statutes or regulations;

g. whether Alter Eco made and breached warranties;

h. the proper amount of damages, including punitive damages;

i. the proper amount of restitution;

j. the proper scope of injunctive relief; and

k. the proper amount of attorneys' fees.

50. These common questions of law and fact predominate over questions that affect only individual Class Members.

51. Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Alter Eco's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Product and suffered economic injury because the Product is misrepresented. Absent Alter Eco's business practice of deceptively

and unlawfully labeling the Product by omitting material information regarding its toxic lead and cadmium content, Plaintiff and Class Members would not have purchased the Product or would have paid less for it.

52.    Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation, and specifically in litigation involving the false and misleading advertising of foods and beverages.

53.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

54.    Alter Eco has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

55.    As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violations of the Unfair Competition Law

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

56.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

57.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

58.    Under California Business & Professions Code §17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

59.    The acts, omissions, misrepresentations, practices, and non-disclosures of as alleged herein constitute business acts and practices.

*Rodriguez v. Alter Eco Americas Inc.*
CLASS ACTION COMPLAINT

### Fraudulent

60.     A statement or practice is fraudulent under the UCL if it is likely to deceive a significant portion of the public, applying an objective reasonable consumer test.

61.     As set forth herein, Alter Eco's omissions regarding the toxic lead and cadmium content of the Product is likely to deceive reasonable consumers and the public.

### Unlawful

62.     As set forth herein, Alter Eco's omissions are "unlawful" under the UCL in that they violate at least the following laws:

- The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;
- The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;
- The Song-Beverly Act, Cal. Civ. Code, §§ 1790 *et seq.*;
- The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; and
- The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq.*

63.     By violating these laws, Defendant has engaged in unlawful business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code § 17200.

### Unfair

64.     Alter Eco's conduct with respect to the labeling, advertising, and sale of the Product was unfair because Alter Eco's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

65.     Alter Eco's conduct with respect to the labeling, advertising, and sale of the Product was also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to the False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, the Song Beverly Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

*Rodriguez v. Alter Eco Americas Inc.*
CLASS ACTION COMPLAINT

66.    Alter Eco's conduct with respect to the labeling, advertising, and sale of the Product was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided. Specifically, the increase in profits obtained by Alter Eco through the misleading labeling does not outweigh the harm to Class Members who were deceived into purchasing the Product unaware that it contains toxic lead or cadmium and is of the type that can increase the risk of poor health. Consumers could not have reasonably avoided the harm because this would have required that they conduct their own research into the lead and/or cadmium content of the Product, which could only feasibly be revealed by laboratory testing, which is not a reasonable expectation. Further, the harm could have easily been avoided by Alter Eco as it would have cost them only minimally to place a warning on the label that the Product contain toxic lead and cadmium. Alternatively, Alter Eco could have done more to ensure heavy metals, including lead and cadmium, were not in the Product.

67.    Alter Eco profited from the sale of the falsely, deceptively, and unlawfully advertised the Alter Eco Product to unwary consumers.

68.    Plaintiff and Class Members are likely to continue to be damaged by Alter Eco's deceptive trade practices, because Alter Eco continues to disseminate misleading information. Thus, injunctive relief enjoining Alter Eco's deceptive practices is proper.

69.    Alter Eco's conduct caused and continues to cause substantial injury to Plaintiff and other Class Members. Plaintiff has suffered injury in fact as a result of Alter Eco's unlawful conduct.

70.    In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Alter Eco from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices.

71.    Plaintiff and the Class also seek an order for the restitution of all monies from the sale of the Product, which were unjustly acquired through acts of unlawful competition.

*Rodriguez v. Alter Eco Americas Inc.*
CLASS ACTION COMPLAINT

72.     Because Plaintiff's claims under the "unfair" prong of the UCL sweep more broadly than their claims under the FAL, CLRA, or UCL's "fraudulent" prong, Plaintiff's legal remedies are inadequate to fully compensate Plaintiff for all of Alter Eco's challenged behavior.

## SECOND CAUSE OF ACTION

### Violations of the False Advertising Law

### Cal. Bus. & Prof. Code §§ 17500 *et seq.*

73.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

74.     California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code § 17500.

75.     As set forth herein, the Plaintiff purchased a Product based on the label, which constituted advertising and which omitted the presence of toxic lead and cadmium in the Product.

76.     Plaintiff and the Class Members paid money for the Alter Eco Product. However, they did not obtain the full value or any value of the Product due to Alter Eco's omissions regarding the nature of the Product. Accordingly, Plaintiff and the Class Members suffered an injury in fact and lost money or property as a direct result of Alter Eco's omissions.

77.     Alter Eco's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase the Product in the future and hope to rely on Alter Eco's marketing and packaging.

78.     Plaintiff and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Product.

79.     Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from her purchase of the Product is determined to be an amount less than the premium price of the Product. Without

compensation for the full premium price of the Product, Plaintiff would be left without the parity in purchasing power to which they are entitled.

80.    Injunctive relief is also appropriate, and indeed necessary, to require Alter Eco to provide full and accurate disclosures regarding the Product so that Plaintiff and Class members can reasonably rely on the Product's packaging as well as those of Alter Eco's competitors who may then have an incentive to follow Alter Eco's deceptive practices, further misleading consumers.

81.    Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein. The return of the full price or full premium price, and an injunction requiring either (1) adequate disclosures of the existence of toxic lead and cadmium in the Product or (2) the removal of lead and cadmium from the Product, will ensure that Plaintiff and other Class Members are in the same place they would have been in had Alter Eco's wrongful conduct not occurred, *i.e.*, in the position to make an informed decision about the purchase of the Product absent omissions.

82.    Because the Court has broad discretion to award restitution under the FAL and could, when assessing restitution under the FAL, apply a standard different than that applied to assessing damages under the CLRA or commercial code (for Plaintiff's breach of warranty claims), and restitution is not limited to returning to Plaintiff and class members monies in which they have an interest, but more broadly serves to deter the offender and others from future violations, the legal remedies available under the CLRA and commercial code are more limited than the equitable remedies available under the FAL, and are therefore inadequate.

### THIRD CAUSE OF ACTION

### Violations of the Consumers Legal Remedies Act

### Cal. Civ. Code §§ 1750 *et seq.*

83.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

*Rodriguez v. Alter Eco Americas Inc.*
CLASS ACTION COMPLAINT

84.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

85.    Alter Eco's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Alter Eco Product for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

        a.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

        b.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

        c.    § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

86.    Alter Eco profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers.

87.    Alter Eco's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

88.    Plaintiff and the Class have suffered harm and seek only injunctive relief and restitution, at this time.

89.    In compliance with Cal. Civ. Code § 1780(d), an affidavit of venue is filed concurrently herewith.

**FOURTH CAUSE OF ACTION**

**Breach of Implied Warranty Under the Song-Beverly Act**

**Cal. Civ. Code §§ 1790 *et seq*.**

90.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

*Rodriguez v. Alter Eco Americas Inc.*
CLASS ACTION COMPLAINT

91.     Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq.*, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as defined in that Act. In addition, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

92.     The Product is a "consumer good" within the meaning of Cal. Civ. Code § 1791(a).

93.     Plaintiff and the Class Members who purchased one or more of the Alter Eco Product are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

94.     Alter Eco is in the business of manufacturing, assembling, producing and/or selling the Product to retail buyers, and therefore is a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

95.     Alter Eco impliedly warranted to retail buyers that the Product was merchantable in that it (a) would pass without objection in the trade or industry under the contract description, and (b) was fit for the ordinary purposes for which the Product is used. For a consumer good to be "merchantable" under the Act, it must satisfy both of these elements. Alter Eco breached these implied warranties because the Product was unsafe in that it contained toxic lead and cadmium. Therefore, the Product would not pass without objection in the trade or industry and was not fit for the ordinary purpose for which it is used, which is consumption by consumers, including children.

96.     Plaintiff and the Class purchased the Product in reliance upon Alter Eco's skill and judgment in properly packaging and labeling the Product.

97.     The Product was not altered by Plaintiff or other Class Members.

98.   Alter Eco knew that the Product would be purchased and used without additional testing by Plaintiff and the Class.

99.   As a direct and proximate cause of Alter Eco's breach of the implied warranty, Plaintiff and the Class have been injured and harmed because they would not have purchased the Product or would have paid less for the Product if they knew the truth about the Product, namely, that it contained toxic lead and cadmium.

## FIFTH CAUSE OF ACTION

## Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314

100.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

101.   As set forth herein, Alter Eco manufactured and sold the Product, and prior to the time the Product were purchased by Plaintiff and other Class Members, impliedly warranted that the Product was of merchantable quality and fit for its ordinary use, consumption by consumers, including children.

102.   Alter Eco is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there were, in the sale to Plaintiff and the Class, implied warranties that those goods were merchantable.

103.   Alter Eco impliedly warranted to retail buyers that the Product was merchantable in that it (a) would pass without objection in the trade or industry under the contract description, and (b) was fit for the ordinary purposes for which the Product is used. Defendant breached this implied warranty because the Product was unsafe in that it contained toxic lead and cadmium. Therefore, the Product would not pass without objection in the trade or industry and was not fit for the ordinary purpose for which it is used, which is consumption by consumers, including children.

104.   Alter Eco was on notice of this breach as it was aware of the lead and cadmium in the Product, including based on receiving notice in at least 2019.

105.   As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and the Class members have been injured and harmed because they would not have purchased the Product or would have paid less for it if they knew the truth about the Product, namely, that it contained lead and cadmium.

106.   As a result, Plaintiff seeks actual damages, including, without limitation, expectation damages.

### SIXTH CAUSE OF ACTION

### Unjust Enrichment

107.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

108.   Alter Eco's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiff's and Class Members' purchases of the Product, and the economic benefits conferred on Alter Eco are a direct and proximate result of its unlawful and inequitable conduct.

109.   It would be inequitable, unconscionable, and unjust for Alter Eco to be permitted to retain these economic benefits because the benefits were procured as a direct and proximate result of its wrongful conduct.

110.   As a result, Plaintiff and Class Members are entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Alter Eco as a result of such business practices.

### PRAYER FOR RELIEF

111.   Wherefore, Plaintiff, on behalf of herself, all others similarly situated, and the general public, prays for judgment against Alter Eco as to each and every cause of action, and the following remedies:

a.      An Order declaring this action to be a proper class action, appointing Plaintiff as Class Representative, and appointing Plaintiff's undersigned counsel as Class Counsel;

*Rodriguez v. Alter Eco Americas Inc.*
CLASS ACTION COMPLAINT

b.     An Order requiring Alter Eco to bear the cost of Class Notice;

c.     An Order compelling Alter Eco to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending Products;

d.     An Order requiring Alter Eco to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

e.     An Order requiring Alter Eco to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgment interest thereon;

f.     An Order requiring Alter Eco to pay compensatory damages and punitive damages as permitted by law;

g.     An award of attorneys' fees and costs; and

h.     Any other and further relief that Court deems necessary, just, or proper.

## **JURY DEMAND**

112.  Plaintiff hereby demands a trial by jury on all issues so triable.


Dated:  January 11, 2023            /s/   Trevor Flynn

**FITZGERALD JOSEPH LLP**
JACK FITZGERALD
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiff***